IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BRENDA UMHOLTZ, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Case No. 11-4018-RDR |
| | ) |
| STATE OF KANSAS, DEPARTMENT OF | ) |
| SOCIAL AND REHABILITATION SERVICES | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM AND ORDER

There are three plaintiffs in this case: Brenda Umholtz, Paul Levy and Tina Bruce. Plaintiff Umholtz was the sole plaintiff when this case was originally filed. Plaintiff Levy was added in an amended complaint filed March 2, 2011 and plaintiff Bruce was added in an amended complaint filed April 6, 2011. All three plaintiffs bring claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Rehabilitation Act of 1971, 29 U.S.C. § 794. This case is before the court upon motions for summary judgment by defendant State of Kansas Department of Social and Rehabilitation Services against the claims of each plaintiff and a motion for partial summary judgment filed by plaintiff Bruce.

I. Standards for summary judgment

Summary judgment is proper if the moving party demonstrates that there is no genuine dispute as to any material fact and

that the moving party is entitled to judgment as a matter of law.  FED.R.CIV.P. 56(c).  The court views the evidence in a light most favorable to the nonmoving party.  <u>Spaulding v. United Transp. Union</u>, 279 F.3d 901, 904 (10th Cir. 2002).  A fact issue is material if its resolution is essential to the proper disposition of a claim.  <u>Wright ex rel. Trust Co. of Kan. V. Abbott Labs., Inc.</u>, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  A factual dispute is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  <u>Adler v. Wal-Mart Stores, Inc.</u>, 144 F.3d 664, 670 (10th Cir. 1998).  "While we view the record in the light most favorable to the non-moving party, that party must still identify sufficient evidence requiring submission to the jury to survive summary judgment."  <u>Piercy v. Maketa</u>, 480 F.3d 1192, 1197 (10th Cir. 2007).  In other words, the court may consider evidence produced by the moving party as well as the absence of admissible evidence in favor of an essential element of the non-moving party's claim.  <u>Adams v. Am. Guar. & Liab. Ins. Co.</u>, 233 F.3d 1242, 1246 (10th Cir. 2000).

II.  <u>The summary judgment motion against plaintiff Bruce shall be granted in part and denied in part</u>.

   A.  <u>Plaintiff Bruce's claims and factual background</u>

   Plaintiff Bruce is blind.  She was employed as a Rehabilitation Counselor II by defendant beginning November 18,

2001.   Her job title changed to Human Services Counselor in 2003.  She was dismissed from employment effective September 29, 2009 for alleged inefficiency or incompetence.   She appealed this dismissal to the Kansas Civil Service Board ("KCSB").   On December 30, 2010, the KCSB issued a final order which directed that plaintiff Bruce be reinstated with backpay and benefits as a Human Services Counselor with SRS and "be provided assistive technology that is consistently available and fully functioning."  The decision of the KCSB was upheld after appeal to the Shawnee County District Court on December 5, 2011. Plaintiff Bruce was reinstated to her position with defendant effective January 22, 2012 and received her backpay. Eventually, plaintiff was also given credit for her accumulated annual leave and sick leave, although plaintiff alleges that this did not happen until August 3, 2012 and that the delay caused her emotional distress.

Plaintiff alleges that she has not been given the duties of a Human Services Counselor and has been relegated to handling solely intake duties as opposed to providing services to clients from the time of their applications through the closure of their cases, as she did prior to her termination.   Plaintiff also alleges that she is being forced to use the same outdated technology as she used before her termination, with the exception of a PacMate note taker.

B.  <u>Defendant is immune from ADA liability</u>.

Plaintiff Bruce has brought claims under the ADA for discrimination and retaliation.  Plaintiff Bruce added the Rehabilitation Act as a basis for discrimination and retaliation claims in the pretrial order.  The State of Kansas enjoys immunity under the Eleventh Amendment from being sued in federal court by its own citizens, regardless of whether a plaintiff seeks declaratory or injunctive relief, or money damages.  <u>Steadfast Ins. Co. v. Agricultural Ins. Co.</u>, 507 F.3d 1250, 1252 (10th Cir. 2007).  Defendant is an agency of the State of Kansas and may allege Eleventh Amendment immunity from liability.  <u>ANR Pipeline Co. v. Lafaver</u>, 150 F.3d 1178, 1187 (10th Cir. 1998) <u>cert. denied</u>, 525 U.S. 1122 (1999).  In its motion for summary judgment, defendant has asserted this defense against plaintiff's ADA claims.

There are three exceptions to the general rule of Eleventh Amendment immunity:  1) States may consent to suit, waiving immunity;  2) Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority; and, 3) under <u>Ex Parte Young</u>, prospective injunctive relief against ongoing violations of federal law may be obtained by bringing suit against state officials in federal court.  <u>Chaffin</u>

v. Kansas State Fair Board, 348 F.3d 850, 866 (10th Cir. 2003)(internal citations and quotations omitted).

Here, plaintiff's argument against Eleventh Amendment immunity is an amalgam of the first and second exceptions. Plaintiff relies upon a statutory provision passed as part of the Rehabilitation Act Amendments of 1986, four years before the ADA was enacted. This statute, 42 U.S.C. § 2000d-7(a)(1), states:

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal Court for a violation of section 504 of the Rehabilitation Act, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

Plaintiff contends that because defendant receives federal financial assistance, it has waived its Eleventh Amendment immunity against any claim under a statute such as the ADA which prohibits discrimination.

Plaintiff's employment discrimination claim is brought under Title I of the ADA. Many courts have held that the Eleventh Amendment bars Title I claims against States or state agencies. See Okwu v. McKim, 682 F.3d 841, 845 (9th Cir. 2012); Kirby v. Brown, 2013 WL 324280 *2 (E.D.Cal. 1/28/2013); Rowe v. New York State Div. of the Budget, 2012 WL 4092856 *3 (N.D.N.Y. 9/17/2012); Davis v. Dept. of Corrections, 868 F.Supp.2d 313,

322 (D.Vt. 2012); Williams v. Recovery School District, 859 F.Supp.2d 824, 832 (E.D.La. 2012); Goodnow v. Oklahoma Dept. of Human Services, 2011 WL 4830183 *1-2 (N.D.Okla. 10/12/2011); Elwell v. Oklahoma, 2011 WL 560455 *3 (W.D.Okla. 2/8/2011); Scherman v. New York State Banking Dept., 2010 WL 997378 *6 (S.D.N.Y. 3/19/2010) aff'd, 443 Fed.Appx. 600 (2nd Cir. 10/20/2011); Tarver v. Oklahoma, 2010 WL 944205 *2 (N.D.Okla. 3/11/2010); Briggs v. New York State Dept. of Transp., 233 F.Supp.2d 367, 372-73 (N.D.N.Y. 2002); Gary v. Georgia Dept. of Human Resources, 323 F.Supp.2d 1368, 1372 (M.D.Ga. 2004). Plaintiff's retaliation claim is brought under Title V of the ADA.  The same Eleventh Amendment analysis is often applied to Title V claims, particularly when the alleged retaliation is tied to a Title I claim.  See Demshki v. Monteith, 255 F.3d 986, 988-89 (9th Cir. 2001); Rowe, supra; Johnson v. New York State Dept. of Correctional Services and Community Supervision, 2012 WL 4033485 *3 (W.D.N.Y. 9/12/12); Collazo-Rosado v. University of Puerto Rico, 775 F.Supp.2d 376, 384-85 (D.P.R. 2011); Davis, 868 F.Supp.2d at 322; Emmons v. City Univ. of New York, 715 F.Supp.2d 394, 408 (E.D.N.Y. 2010); McCollum v. Owensboro Comm. & Technical College, 2010 WL 5393852 *3 (W.D.Ky. 12/22/2010); Padilla v. New York State Dept. of Labor, 2010 WL 3835182 *4-5 (S.D.N.Y. 9/13/2010); Warren v. Goord, 2006 WL 1582385 *17

(W.D.N.Y. 5/26/2006); <u>Cisneros v. Colorado</u>, 2005 WL 1719755 *6 (D.Colo. 7/22/2005).

Many of the above-cited opinions make reference to <u>Board of Trustees v. Garrett</u>, 531 U.S. 356 (2001), where the Court held that Congress did not have the constitutional authority to abrogate Eleventh Amendment immunity from suits for money damages under Title I of the ADA. Most of these cases do not make reference to the provision cited by plaintiff, § 2000d-7(a)(1), which is the source of plaintiff's waiver argument.

The Supreme Court has remarked that the test for determining whether a State has waived its immunity is a "stringent one." <u>Sossamon v. Texas</u>, 131 S.Ct. 1651, 1658 (2011). "Waiver may not be implied . . . . [and] will be strictly construed, in terms of its scope, in favor of the sovereign." <u>Id.</u> (interior quotations omitted). Thus, "where a statute is susceptible of multiple plausible interpretations, including one preserving immunity, [courts should] not consider a State to have waived its sovereign immunity." <u>Id.</u> at 1659. Quoting the Supreme Court's opinion in <u>Atascadero State Hosp. v. Scanlon</u>, 473 U.S. 234, 239-40 (1985), the Tenth Circuit has observed that "[a] state may waive its Eleventh Amendment immunity 'only where stated by the most express language or by such overwhelming implication from the text [of a state statutory or constitutional provision] as [will] leave no room

for any other reasonable construction.'"   V-1 Oil Co. v. Utah
State Dept. of Public Safety, 131 F.3d 1415, 1421 (10th Cir.
1997).

The court does not believe that the phrase in § 2000d-7(a)(1) - - "any other Federal statute prohibiting discrimination by recipients of Federal financial assistance" - - unequivocally waives the Eleventh Amendment immunity against ADA claims by state agencies who receive federal financial assistance.   See Sanders ex rel. Rayl v. Kansas Dept. of SRS, 317 F.Supp.2d 1233, 1242 n.2 (D.Kan. 2004)(§ 2000d-7 does not apply to ADA claims); Gary, 323 F.Supp.2d at 1373 n.16 (States do not consent to suit on Title I ADA claims by accepting federal funds); Johnson v. State of Louisiana, 2002 WL 83645 *5 n. 14 (E.D.La. 1/18/2002)(§ 2000d-7 does not clearly, unambiguously and unequivocally include the ADA within its scope).   The statute does not expressly refer to the ADA.   The ADA, unlike the statutes specifically listed in § 2000d-7, does not explicitly refer to "recipients of federal financial assistance" or to discrimination by entities "receiving federal financial assistance."   Finally, the ADA did not exist when § 2000d-7 was enacted.

Furthermore, Eleventh Amendment immunity is still considered to apply to other statutes which directly or indirectly address discrimination such as 42 U.S.C. §§ 1981 and

8

1983, in spite of the provisions of § 2000d-7.  See <u>Kaimowitz v.</u>
<u>Bd. Of Trustees</u>, 951 F.2d 765, (7th Cir. 1991)(§ 2000d-7 does not
apply to § 1983); <u>Miraki v. Chicago State University</u>, 259
F.Supp.2d 727, 731 (N.D.Ill. 2003)(§ 1981 does not fall within
catch-all provision of § 2000d-7); <u>McCreery v. North Carolina</u>,
2002 WL 32334399 *1 (E.D.N.C. 5/4/2002) <u>aff'd</u>, 48 Fed.Appx. 76
(4th Cir. 10/16/2002)(§ 2000d-7 does not apply to § 1983 or §
1985); <u>Clemes v. Del Norte County Unified School Dist.</u>, 843
F.Supp. 583, 594 (N.D.Cal. 1994)(§ 2000d-7 does not apply to §
1983).

     For the above-stated reasons, the court finds that
plaintiff Bruce's ADA claims are barred by Eleventh Amendment
immunity.

     C.  <u>The court shall deny summary judgment against plaintiff</u>
<u>Bruce's Rehabilitation Act claims</u>.

          1.   <u>The court had jurisdiction to add the</u>
<u>Rehabilitation Act claims to this case and the claims relate</u>
<u>back to April 6, 2011, the date of the amended complaint where</u>
<u>plaintiff Bruce was added as a party</u>.

     Plaintiff Bruce was added as a party in this case on April
6, 2011 when an amended complaint was filed asserting
discrimination and retaliation claims under the ADA on her
behalf.  Plaintiff Bruce did not allege claims under the
Rehabilitation Act until the pretrial conference conducted on
February 8, 2012.  A pretrial order reflecting the events of the
pretrial conference was filed on February 21, 2012.  According

to the pretrial order, defendant agreed not to oppose the requested amendment to add the claims under the Rehabilitation Act and, in exchange, plaintiffs agreed that defendant had not waived the defense of sovereign immunity.  The pretrial order noted that it was "the court's understanding that defendant may raise the defense of sovereign immunity as to the ADA claims and statute of limitations as to the Rehabilitation Act claims." Doc. No. 28 at p. 2 n.1 (emphasis supplied).

Defendant argues that plaintiff's Rehabilitation Act claims must be dismissed because the court did not have subject matter jurisdiction over any claims raised by plaintiff Bruce at the time of the pretrial conference (because of defendant's Eleventh Amendment immunity against the ADA claims) and therefore the court lacked the power to permit plaintiff to add the Rehabilitation Act claims.  We reject this argument.

Although there are many, many cases which seem to equate an Eleventh Amendment immunity defense with the lack of subject matter jurisdiction, the equation is more of an approximation. See Calderon v. Ashmus, 523 U.S. 740, 745 n.2 (1998)(recognizing that Eleventh Amendment "is not coextensive with the limitations on judicial power in Article III").  Unlike the defense of lack of subject matter jurisdiction, Eleventh Amendment immunity may be waived (as discussed above) and courts may choose not to raise it sua sponte.  Wisconsin Dept. of Corrections v. Schacht,

524 U.S. 381, 389 (1998); see also, Steadfast Ins. Co., 507 F.3d at 1252 (the Eleventh Amendment does not automatically destroy a federal court's jurisdiction to decide lawsuits brought against a state).   The Tenth Circuit has stated that:   "[o]nce effectively raised, the Eleventh Amendment becomes a limitation on our subject-matter jurisdiction."   Harris v. Owens, 264 F.3d 1282, 1288 (10th Cir. 2001)(emphasis supplied).

Here, defendant did not "effectively raise" Eleventh Amendment immunity as a defense until it filed its motion for summary judgment, which was sometime after the court conducted the pretrial conference and permitted plaintiff to add the claims under the Rehabilitation Act.   We find that the court had the authority to add those claims because the Eleventh Amendment had not been effectively raised as a defense at that time.   The Rehabilitation Act claims related back to the second amended complaint pursuant to FED.R.CIV.P. 15(c)(1)(B).   Accordingly, the statute of limitations issues raised by defendant are not a complete defense warranting summary judgment.

2.   Plaintiff Bruce's Rehabilitation Act claims are not moot.

Defendant contends that plaintiff Bruce's claims should be considered moot because she has already received full relief by virtue of the KCSB order.   According to the pretrial order, plaintiff Bruce is requesting, among other relief, damages for

non-economic loss in the amount of $300,000.00.  Defendant's argument regarding its compliance with the KCSB order does not address this part of plaintiff Bruce's damages claim.  Moreover, plaintiff Bruce contends that defendant has not fully complied with the KCSB order.  There appears to be a genuine issue of fact as to this point as plaintiff has filed a declaration stating that that she has not been reinstated to the full duties of a Human Resources Counselor and that she has not been given assistive technology that is consistently available and fully functioning.  Therefore, the court shall not grant summary judgment against plaintiff Bruce's claims on the basis of defendant's mootness argument.[1]

    3.    <u>Summary judgment shall be granted against plaintiff Bruce's claims for compensatory damages as part of her retaliation claim under the Rehabilitation Act.</u>

Defendant's final argument for summary judgment against plaintiff Bruce's claims is that compensatory damages are not recoverable for a claim of retaliation under the Rehabilitation

---

[1]The court is not purporting to find that the relief ordered by the KCSB is congruent with the relief to which plaintiff may be entitled under the Rehabilitation Act.  The order of the KCSB does not indicate that it is adjudicating a Rehabilitation Act claim.  Therefore, although the pretrial order states that plaintiff is seeking (as "non-monetary relief") an order enjoining defendant to comply with the KCSB order, such relief is not necessarily what is authorized by the Rehabilitation Act.  Plaintiff is entitled to bring an action under the Rehabilitation Act and to obtain the relief to which she is entitled under the Act.  But, the enforcement of KSCB orders is a matter for state agencies and courts – not federal court.

Act.   The Rehabilitation Act, 29 U.S.C. § 794(a), prohibits discrimination in programs receiving Federal financial assistance.   The standards used to determine what constitutes discrimination are set forth in § 794(d) and reference the provisions of the ADA which prohibit retaliation against persons who have opposed any act or practice made unlawful by [the ADA] "or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]."  42 U.S.C. § 12203(a).

There are two published circuit court cases holding that there is no right to compensatory damages for retaliation claims brought pursuant to the ADA.  Alvarado v. Cajun Operating Co., 588 F.3d 1261, 1264-70 (9th Cir. 2009); Kramer v. Banc of America Securities, LLC, 355 F.3d 961, 964-66 (3rd Cir.) cert. denied, 542 U.S. 932 (2004).[2]  These cases have ruled that relief under the ADA originally did not provide for compensatory or punitive damages.  With the passage of the 1991 Civil Rights Act, 42 U.S.C. § 1981a, the possible remedies for some ADA violations were expanded to include compensatory and punitive damages but actions for retaliation under § 12203(a) were not mentioned. Since retaliation claims were not listed by Congress for expanded relief under § 1981a, the courts in Kramer and Alvarado held that compensatory and punitive damages could not be

---

[2] The Fourth Circuit followed the holding in Kramer in Rhoads v. FDIC, 94 Fed.Appx. 187, 188 (4th Cir.) cert. denied, 543 U.S. 927 (2004).

recovered for such actions. Two cases from the District of Kansas, which predate <u>Kramer</u> and <u>Alvarado</u>, have applied similar reasoning. <u>Sink v. Wal-Mart Stores, Inc.</u>, 147 F.Supp.2d 1085, 1100-01 (D.Kan. 2001); <u>Boe v. Allied Signal, Inc.</u>, 131 F.Supp.2d 1197, 1202-03 (D.Kan. 2001); see also <u>Brown v. U.S.D. No. 500</u>, 338 F.Supp.2d 1229, 1232 (D.Kan. 2004)(following <u>Boe</u>). This has been characterized as the majority rule, at least among district courts. <u>Arredondo v. S2 Yachts</u>, 496 F.Supp.2d 831, 836 (W.D.Mich. 2007); see also, <u>Kozempel v. Grand View Hosp.</u>, 2011 WL 1196851 *3 n.3 (E.D.Pa. 3/30/2011)(listing numerous cases); <u>N.T. ex rel. Trujillo v. Espanola Public Schools</u>, 2005 WL 6168483 *13 (D.N.M. 6/21/2005)(applying analysis to retaliation claims under Rehabilitation Act). The court acknowledges that the Tenth Circuit (as well as other circuit courts) have affirmed jury verdicts where punitive damages were awarded in ADA retaliation claims, but the Tenth Circuit did not address the threshold question of whether the law permitted a plaintiff to recover such damages, only whether the evidence supported such an award. <u>EEOC v. Wal-Mart Stores, Inc.</u>, 187 F.3d 1241, 1246 (10th Cir. 1999). The court also acknowledges legal commentary which is critical of the <u>Kramer</u> holding. Katie M. Mueting, Note, <u>A Case for Allowing Victims of ADA Retaliation and Coercion in Employment to Recover Legal Damages</u>, 92 IOWA L. REV. 1493 (May 2007); Brian M. Saxe, Comment, <u>When a Rigid</u>

<u>Textualism Fails:  Damages for ADA Employment Retaliation</u>, 2006 MICH. ST. LAW REV. 555 (Summer 2006).

Given the circuit court authority and the cases from the District of Kansas and other courts which side with defendant, and the absence of contrary holdings directly addressing the question from the Tenth Circuit or other circuits, the court shall find that the plaintiff Bruce may not recover compensatory or punitive damages upon her retaliation claim under the Rehabilitation Act.

III.   <u>Plaintiff Bruce's motion for partial summary judgment shall be denied</u>.

Plaintiff Tina Bruce has filed a motion for partial summary judgment which contends that, under the doctrine of collateral estoppel, she is entitled to summary judgment upon her claim of discrimination and failure to accommodate in violation of the Rehabilitation Act since she prevailed before the KCSB and its decision was affirmed by the Kansas District Court for Shawnee County, Kansas.

In its order the Kansas Civil Service Board made the following conclusions:

After considering all of the evidence, The Board finds that the decision of Mr. Donnelly to dismiss Ms. Bruce was unreasonable.

[F]or the most part, the assistive technology given to Ms. Bruce was inadequate, outdated and/or unreliable.  While Ms. Bruce made very specific requests for adequate assistive technology, SRS never acted on her requests.

SRS never requested a technology assessment of Ms. Bruce prior to her dismissal to determine if the technology she was using was adequate for her to perform her job or if additional technology could be provided to assist her.   The assessment ordered by the Board detailed several issues with regard to the adequacy of the technology provided to Ms. Bruce.

The Board finds that it is highly likely that Ms. Bruce's ability to perform her duties was hindered by the lack of adequate assistive technology; to what extent, however, is unclear.

In any event, the Board finds that Ms. Bruce has established that the decision of Mr. Donnelly to dismiss her was unreasonable.

"Federal courts give state agency determinations the same preclusive effect that the forum state's courts would afford them."  Guttman v. Khalsa, 669 F.3d 1101, 1109 (10th Cir. 2012). Issue preclusion may be invoked in Kansas courts when the following is shown:  1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment; 2) the parties are the same or in privity, and 3) the issue litigated must have been determined and necessary to support the judgment.  Jackson Trak Group Inc. v. Mid States Port Authority, 751 P.2d 122, 128 (Kan. 1988).

Kansas applies the doctrine of collateral estoppel to unreviewed decisions of administrative agencies and political subdivisions of the State acting in a judicial or quasi-judicial capacity.  See Zimmerman v. Sloss Equip., Inc., 72 F.3d 822, 826 (10th Cir. 1995).  "The party asserting collateral estoppel must

establish that 'the requirements of the doctrine [were] met and the proceeding [in front of the administrative agency was] judicial in nature,' which in turn depends on whether there were 'sufficient due process protections.'"   Id. (quoting, Murphy v. Silver Creek Oil & Gas, Inc., 837 P.2d 1319, 1321 (Kan.App. 1992)).   These elements are consistent with concerns expressed by the United States Supreme Court that "an administrative decision . . . satisfy three fairness requirements:   1) the agency must have been acting in a judicial capacity; 2) it must be resolving issues that are properly before it; and 3) the parties must have an adequate opportunity to litigate those issues before the agency."   Brockman v. Wyoming Dept. of Family Services, 342 F.3d 1159, 1166 (10th Cir. 2003)(citing United States v. Utah Const. & Mining Co., 384 U.S. 394, 422 (1966)). There appears to be no dispute here that in considering the appeal of plaintiff Bruce, the KCSB acted in a quasi-judicial capacity, resolved issues properly before it, and provided the fundamental elements of due process through its procedures.

Plaintiff Bruce argues that the KCSB made a finding as to discrimination which should be given issue preclusion effect for the purposes of plaintiff Bruce's Rehabilitation Act claim.   The KCSB, however, did not explicitly discuss or make findings as to a claim under the Rehabilitation Act or the ADA; nor did it make of finding of discrimination, intentional or otherwise.   Its

17

task was to determine whether plaintiff Bruce's discharge was reasonable. See K.S.A. 75-2949(f)("Any permanent employee finally dismissed . . . may request a hearing from the [KCSB] to determine the reasonableness of such action.") A finding of intentional discrimination is necessary to plaintiff's claim for compensatory damages under the Rehabilitation Act. <u>Powers v. MJB Acquisition Corp.</u>, 184 F.3d 1147, 1152-53 (10th Cir. 1999).

While there might be an issue as to liability for non-intentional discrimination which is tied up with whether defendant has complied with the KCSB's order of non-compensatory relief, this issue is also linked with the mootness question. Consequently, it does not appear necessary or particularly efficient to determine at this point whether the KCSB's order decided in effect that defendant discriminated against plaintiff Bruce in violation of the Rehabilitation Act so as to warrant non-compensatory relief, when it is possible that such relief has already been supplied. If defendant has not complied with the KCSB's order and its non-compliance is a violation of the Rehabilitation Act, then the court will order appropriate non-compensatory relief.

Plaintiff Bruce also argues that the KCSB made a finding that defendant failed to properly accommodate plaintiff Bruce and that this finding should be given issue preclusion effect for the purposes of plaintiff Bruce's claims under the

18

Rehabilitation Act.    "To prevail on a failure-to-accommodate claim a plaintiff must demonstrate that:  1) she is disabled; 2) she is 'otherwise qualified'; and 3) she requested a plausibly reasonable accommodation."   Sanchez v. Vilsack, 695 F.3d 1174, 1177 (10th Cir. 2012).   A "reasonable accommodation" is defined in federal regulations as:

> (i) Modifications or adjustments to a job application process that enable a qualified applicant with a disability to be considered for the position such qualified applicant desires; or
> (ii) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position; or
> (iii) Modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.

29 C.F.R. § 1630.2(o).   The regulations do not mandate a reasonable accommodation which requires "undue hardship" after a consideration of cost, financial resources, and the operation of the entity.   29 C.F.R. § 1630.2(p).   These regulations apply to the ADA, but ADA standards are applied to Rehabilitation Act claims. Wilkerson v. Shinseki, 606 F.3d 1256, 1262 (10th Cir. 2010).

To be "qualified," a person must be able to perform the "essential functions" of the job with or without reasonable accommodation.   See Brockman, 342 F.3d at 1168.   The KCSB order

found that there were several issues with regard to the adequacy of the technology provided to plaintiff Bruce; that for the most part the technology given to Ms. Bruce was inadequate, outdated and/or unreliable; that plaintiff Bruce made very specific requests for adequate assistive technology; and that it was highly likely that plaintiff Bruce's ability to perform her duties was "hindered by the lack of adequate assistive technology [ – – ] to what extent however, is unclear." The KCSB also ordered a technology assessment which suggested steps which "may have helped [plaintiff Bruce] function more effectively in her position," but which also observed that plaintiff Bruce "was able to carry out the tasks required [in her job] using a combination of the assistive technology and assistance" which defendant had provided.   Doc. No. 46, Exhibit 5.   Given the KCSB's statement that the extent of hindrance was "unclear," the ambiguity in the technology evaluation, as well as the KCSB's statement upon reconsideration that it would have reached the same decision without the technology evaluation, the court concludes that plaintiff Bruce has not demonstrated that the KCSB's order decided the issue of whether defendant failed to accommodate as required to permit her to perform the essential tasks of her job.

     For the above-stated reasons, the court shall deny plaintiff Bruce's motion for partial summary judgment.

IV.   The summary judgment motion against plaintiff Umholtz's
claims shall be granted in part and denied in part.

Plaintiff Brenda Umholtz claims that defendant violated the
Rehabilitation Act by cancelling a contract plaintiff Umholtz
had with the Wichita Area Office of defendant in retaliation for
her remarks in a vocational assessment she performed for
plaintiff Tina Bruce.  Defendant has asked for summary judgment
against all or part of this action.

A.   Uncontroverted facts

The following facts appear to be uncontroverted.   In
December 2008, plaintiff Umholtz was a professional
rehabilitation counselor who had a provider agreement with
defendant.   About that time, plaintiff Paul Levy, a
rehabilitation counselor for defendant, selected plaintiff
Umholtz to do a vocational assessment of plaintiff Bruce, who,
of course, was also an employee of defendant.   In early January
2009, plaintiff Levy wrote an email to Paul Meals, the
Rehabilitation Service Program Administrator for the Wichita
Regional Office of defendant, informing him that plaintiff Bruce
had applied to Levy for vocational rehabilitation services to
look into workplace accommodations that might assist her to
retain employment.   He further told Meals that Levy wanted
plaintiff Umholtz to conduct the evaluation.   Meals forwarded a
copy of the email to Mr. Michael Donnelly, Director of

Rehabilitation Services for defendant. Donnelly was the supervisor who ultimately made the decision to terminate plaintiff Umholtz's provider agreement. Meals and Donnelly did not immediately voice an objection to Levy asking plaintiff Umholtz to do the vocational evaluation of Bruce. Plaintiff Umholtz met with Meals on January 21, 2009 and discussed what she needed to complete the assessment. The next day, Meals sent an email to Donnelly informing him that the vocational assessment was being done by plaintiff Umholtz and that it would be a possible source of information and professional guidance related to accommodation needs.

Plaintiff Umholtz completed the vocational assessment on January 22, 2009, the day after she talked to Meals. In the assessment, plaintiff Umholtz wrote:

> [I]t is my professional assessment and opinion that Ms. Bruce is not being fairly represented according to her own peers nationally. It is difficult to fully assess Mrs. Bruce's performance if her caseload is significantly greater, almost three times greater for those handling specialized caseloads, than her peers on a national scale. It is my professional opinion that she cannot be fairly evaluated at this time by this vocational consultant. It is also my opinion that Mrs. Bruce would have difficulty meeting Federal expectations if her peers are handling a caseload of an average (some higher and some lower), of 50 persons with visual impairments [when Ms. Bruce has a much larger caseload].

She also wrote:

> Additionally, it does not appear, in my professional opinion that her accommodations, as required by law,

are enabling her to be on an "equal-playing field" as
her V.R. Counselor counterparts even within her office
. . . . Until she has full accommodations in every
area, any evaluation regarding performance cannot be
adequately conducted.   Mrs. Bruce is protected by
A.D.A. laws regarding accommodations that dictate that
she cannot be fairly evaluated until such
accommodations are consistently available, in working
order during her entire work hours, and are current
and fully-functioning.

Plaintiff Umholtz delivered her assessment to Meals on
January 26, 2009, and Meals sent the assessment to Donnelly on
January 29, 2009.   Donnelly reacted that he was "pretty livid"
after reading it.   On February 12, 2009, Donnelly sent a letter
to plaintiff Umholtz terminating her provider agreement with
defendant.   In his deposition taken for this litigation,
Donnelly commented that plaintiff Umholtz had taken legal
positions or advocacy positions that were inappropriate for a
vocational assessment and that there was a conflict of interest
because Bruce and Levy were responsible for referring vocational
assessment business to plaintiff Umholtz.   However, the letter
terminating the provider agreement did not elaborate upon any
reason for the action.   It simply terminated the agreement
without explanation.

B.   The court shall grant defendant summary judgment
against plaintiff Umholtz's ADA claims on the basis of Eleventh
Amendment immunity.

To the extent that plaintiff is bringing a retaliation
claim under the ADA (as mentioned in the pretrial order, Doc.

No. 28, p. 13) the court shall grant summary judgment against this claim on the basis of Eleventh Amendment immunity. <u>U.S. ex rel. Burlbaw v. Orenduff</u>, 548 F.3d 931, 942 (10th Cir. 2008)(a court may raise, but is not obliged to raise, Eleventh Amendment immunity <u>sua sponte</u>). The court shall proceed to consider plaintiff Umholtz's retaliation claim under the Rehabilitation Act.

C. <u>The court finds there is a genuine issue of material fact as to whether plaintiff Umholtz engaged in "protected activity" for the purposes of a retaliation claim.</u>

Defendant's first argument for summary judgment is that plaintiff cannot show that she participated in some protected activity opposing an unlawful employment practice. As mentioned earlier in this order, the Rehabilitation Act incorporates the ADA provisions against retaliation in the "standards used in determining [a] violation" of the Act. 29 U.S.C. § 794(d). The anti-retaliation provisions of the ADA, 42 U.S.C. § 12203(a), state that: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." To sustain a retaliation claim under § 12203(a), a plaintiff must show that: 1) she engaged in protected activity; 2) she was subjected to a materially adverse

24

employment action after the protected activity; and 3) a causal connection existed between the protected activity and the adverse action.  See <u>Haynes v. Level 3 Communications</u>, 456 F.3d 1215, 1228 (10th Cir. 2006) <u>cert. denied</u>, 549 U.S. 1252 (2007).

Here, it appears to the court that there is a material issue of fact as to whether plaintiff Umholtz engaged in protected activity.  It is well-accepted that requesting an accommodation is protected activity.  <u>Jones v. U.P.S., Inc.</u>, 502 F.3d 1176, 1194 (10th Cir. 2007).  Plaintiff Umholtz completed a vocational assessment in which she made statements which a reasonable jury could construe as supporting an accommodation for Tina Bruce and opposing the failure to make accommodations to which Tina Bruce was entitled under the Rehabilitation Act. Thus, plaintiff Umholtz has made a viable claim of protected activity.  Defendant argues that plaintiff Bruce did not sign a release so that her employer would see the evaluation.[3]  This does not appear to matter as long as a causal connection can be established between the protected activity and the adverse action.  Defendant also broadly claims that plaintiff Umholtz did not have an objective good faith belief that some practice of defendant violated the law.  Defendant, however, fails to adequately support this claim with evidence and argument in the summary judgment record before the court.

---

[3] Nevertheless, persons responsible for the adverse actions allegedly taken against the plaintiffs in this case did see the evaluation.

D.   A genuine issue of material fact exists as to whether there is a causal connection between plaintiff Umholtz's alleged protected activity and the alleged retaliatory action.

Defendant's second argument for summary judgment is that plaintiff cannot show a causal connection between plaintiff Umholtz's alleged protected activity and the retaliatory action. The court has reviewed the materials placed in the record and concludes that a reasonable jury could find from the course of the events that there was a causal connection in this matter. It appears that Mr. Donnelly was aware of the circumstances of the vocational assessment but did not object until he examined its contents.   There is evidence that, at that point, his objection to the substance of the assessment was strong.   In approximately two weeks, the termination of the provider agreement occurred.   This temporal proximity is further grounds to find a causal connection.   See Barlow v. C.R. England, Inc., 703 F.3d 497, 509 (10th Cir. 2012); Meiners v. Univ. of Kansas, 359 F.3d 1222, 1231 (10th Cir. 2004).   Therefore, the court rejects defendant's second argument for summary judgment.

E.   Plaintiff Umholtz is not entitled to compensatory damages upon her Rehabilitation Act retaliation claim.

For the reasons explained above in relation to plaintiff Bruce's Rehabilitation Act retaliation claim, the court shall grant summary judgment against plaintiff Umholtz's claim for compensatory damages.

V.  Summary judgment shall be granted against plaintiff Levy's claims because they are either barred by the Eleventh Amendment or untimely filed.

     A.  Plaintiff Levy's claims under the ADA are barred by the Eleventh Amendment.

     Defendant makes the same Eleventh Amendment immunity argument against plaintiff Levy's ADA claims as defendant made against plaintiff Bruce's claims.  We adopt the same analysis and hold that defendant has not waived its sovereign immunity.  So, plaintiff Levy's ADA claims must be dismissed.

     B.  Plaintiff Levy's claims under the Rehabilitation Act are untimely.

     Plaintiff Levy claims that he was constructively discharged on February 25, 2009 in retaliation for activity protected under the Rehabilitation Act.  Defendant contends that plaintiff Levy's Rehabilitation Act claims are barred by a two-year statute of limitations borrowed from K.S.A. 60-513.  Plaintiff responds that a three-year limitations period borrowed from 60-512(2) should be applied.  The Tenth Circuit has held that the statute of limitations period for a claim under the Rehabilitation Act is the two-year period borrowed from K.S.A. 60-513.  Baker v. Board of Regents, 991 F.2d 628, 631-32 (10th Cir. 1993); see also, EEOC v. W.H. Braum, Inc., 347 F.3d 1192, (10th Cir. 2003)(citing Baker); Peoples v. Finney County Board of Commissioners, 1995 WL 326131 (10th Cir. 6/1/1995)(refusing to reconsider holding in Baker as to the limitations period for §

1983 actions despite Kansas Supreme Court's holding in Wagher v. Guy's Foods, Inc., 885 P.2d 1197 (Kan. 1994) which applied three-year limitations period in K.S.A. 60-512(2) to discrimination claims under the Kansas Act Against Discrimination).  The court believes we are bound to follow the Baker decision.

Contrary to the situation with plaintiff Bruce's claims, plaintiff Levy's claims are barred by the two-year statute of limitations even if his Rehabilitation Act claims relate back to the date when plaintiff Levy first filed his ADA claims. Plaintiff Levy first entered this case when a first amended complaint was filed on March 2, 2011.  Doc. No. 3.  This was more than two years after plaintiff was allegedly constructively discharged by defendant.

This holding makes it unnecessary to decide the other arguments raised in defendant's summary judgment motion.

VI.  Conclusion

To sum up, summary judgment is granted against plaintiffs' ADA claims and plaintiffs' claims for compensatory or punitive damages stemming from a retaliation action and all claims raised by plaintiff Levy (because they are untimely).  The Rehabilitation Act claims of plaintiff Bruce and plaintiff Umholtz may continue consistent with this order.  Thus, the motions for summary judgment against plaintiff Bruce and

28

plaintiff Umholtz (Doc. Nos. 38 and 34) are granted in part and denied in part and the motion for summary judgment against plaintiff Levy (Doc. No. 36) is granted in full.   The motion for partial summary judgment filed by plaintiff Bruce (Doc. No. 31) is denied.

**IT IS SO ORDERED.**

Dated this 20th day of February, 2013 at Topeka, Kansas.

*s/Richard D. Rogers*
United States District Judge